Whenever you're ready. All right, thank you. Good morning, Your Honors, and may it please the Court. Colin McBeth on behalf of Joseph Darrell Young. I'd like to reserve two minutes for rebuttal, and I'll keep track of my time. Your Honors, the District Court found Mr. Young's prior convictions for Nevada voluntary manslaughter with the use of a deadly weapon and sexually motivated coercion are crimes of violence under Guideline Section 4B1.2. Because that was error, and because the error was not harmless, this Court should remand for resentencing. I'd like to start with the question of harmlessness. The District Court found that sexually motivated coercion satisfies the Intermediate Offenses Clause because it qualifies categorically as a generic forcible sex offense. This Court has held that to qualify as a forcible sex offense, the statute must involve or require a sexual act. But a sexual act is not an element of Nevada sexually motivated coercion. The statute—  Correct, Your Honor. The statute NRS 207.193 unambiguously says the Court shall conduct a hearing at which it determines sexual motivation, and it says the Court shall enter its finding in the record. And this Court in the Masto case said that means that there is an on-the-record termination by the Court of whether something was sexually motivated or not. So, with apologies, and I wonder if you could tell me why you don't think it was harmless, since the judge seems to have considered it both ways, and even made calculations both ways, and then said, here's the—I come out the same way either way. So, yes, Your Honor. Under the Munoz-Camarena case, which this Court noted in its order in which we filed the 20HA letter about, this Court holds that a district court's mere statement, without more, that it would impose the same sentence regardless of a guidelines error is insufficient to establish harmless— Yes, but there was more here, right? Well, I don't think there was, Your Honor. So the district court said if you look at pages EOR 55 through 57, all the court says is, oh, by the way, I think I should mention that I would give the same sentence regardless. It doesn't say why. It doesn't say I think I would impose the same sentence because of Mr. Breung's prior offenses, because of the facts of this case, because of anything. It just says I would impose the same sentence. And it certainly doesn't explain why it would impose such a large variance. Munoz-Camarena says the Court must explain the extent of the variance. And in this case, to get to 57 months, the Court would have to vary up by at least 11 months, because the guidelines range with one crime of violence is 36 to — 37 to 46 months. So that's an 11-month variance, which is a pretty large variance. And there's nothing in the record to explain why the Court thought a variance of that size was appropriate. Well, I grant you that the Court did not, in this same passage that you referred to on 56 to 57, I suppose, didn't give, you know, a specific explanation for the extent of the variance that would have to be contemplated. But earlier in the proceeding, I guess I thought the Court went through a fairly lengthy discussion, wasn't it, of your client's criminal history? And why wouldn't we assume that that's what the judge had in mind in terms of the reason for the upward variance? So that was not the Court, Your Honor. That was the prosecutor. The prosecutor did have a quite lengthy discussion of the facts of the prior convictions and the fact that he thought the sentences that were imposed for those state convictions were not sufficient. And the district court said, you know, I hear you. I acknowledge what you're saying. I get the argument. But it never said I adopt that argument or I find that persuasive. It just said later on, after time had passed, it said I would impose the same sentence. It gave no indication it was adopting that particular argument as opposed to any other reason to vary up by such a large number of months. So I don't think you can read, you know, the fact that the government made an argument doesn't mean that the district court adopted that argument. And especially in this case where the government never raised the harmlessness issue, I think it would be inappropriate to get to that. I just am confused by the statement you just made that it was the prosecutor. So I thought, reading the record, that ER 24 through 26 on to 7 is the judge talking. It says the Court, and then it goes on and on about the history, doesn't it? Unless there's a mistake in the transcript, I think it's the judge. I'm sorry, Your Honor. What were the pages? Starting at ER 24. It talks about in 2001 at age 20, he did this, and then on and on and on. The Court is going through the crimes that are listed in the PSR, but the Court doesn't say that's why I'm imposing this sentence. It never says that. Right. That's why I was saying, I grant you that later when the Court is saying either way I'd come out to, you know, 57 or I thought 5 years was appropriate, there's no explicit tying of the earlier discussion to that. But why in the world, I mean, being fair to district judges, why wouldn't we assume that probably what the Court was going on and on about earlier in the proceeding, that's exactly what motivated her to say that, look, I took a look at this whole thing and I'm thinking 5 years is about appropriate. If I got to do it from this guideline and give a low end, or if I got to go up from a, you know, a lesser guideline, that's what I think is appropriate. Why in the world would we not assume that it's probably because of what the judge had been talking about earlier? Well, the district court goes through not just what it thought were these serious offenses, it also talks about, if I remember correctly, very minor things like traffic tickets and things like that. I believe what was happening as a district court was just going through the PSR to show why the calculation of the guidelines was what it was. Here's where, you know, this offense gives this many criminal history points and this offense gives this many, and that's how I get to Category 5. Essentially explaining the calculation. I don't think it was saying, and it gave no indication at the time, that it was saying that's why I think a sentence of this length may be the same. So it could be that if this court finds the error is not harmless, and it goes back, the district court does the exact same thing. But again, there was no indication of that, and the government never raised this issue, and the Flores case, that this court also cited in its order, says that the cases where this court will sue a sponte address harmlessness are unusual and extraordinary cases where it's beyond all reasonable debate that the same thing would happen on remand. I don't think the court can say it's beyond all reasonable debate that the district court would do the same thing. I guess I think exactly that, because the judge told us so. And I mean, I know our cases have said we need something by the way, by way of explanation, but I just think, I mean, if we were to rule in your favor on this point, it just strikes me as an extremely technical application of those precedents, because the judge, I think, laid out exactly what her thinking was as to why 57 months was appropriate, regardless of where the guidelines left you off. Well, Your Honor, I've read the cases. I haven't gone back and looked at the EORs in those cases. I would imagine in those cases, the district court also gave some indication of why it thought the sentence, it was, you know, it went through the factors under 3553A, it went through the PSR calculations, which is what the court did here, and nevertheless, this court said that's not enough. The mere fact that the district court says I would do the same thing and thinks that that's, you know, complies with 3553A is not by itself enough. There has to be an explanation of the extent of the variance. And the district court never said, you know, I think an 11-month variance would be appropriate because this voluntary manslaughter conviction, you know, involved the death of someone. But, okay. But if that sentence, that single sentence that you just recited had appeared in the transcript at the point that you're referring to, then you would agree that that's the end of the story. I think under this Court's case, all yes. If the court had said, I think, you know, given the prior sentences were so lenient, given that they were serious offenses, therefore, even if the calculation were 37 to 46, I would do the same thing. You know, I don't think under Munoz-Camarena that that would necessarily not be harmless. How can it make a difference, though? So, I mean, the judge says I would do the same thing. So maybe the judge then didn't give the explanation, but we should remand so the judge can give the explanation? I mean, is there actually any question that this judge is going to do the same thing? Well, that's exactly what happened in Munoz-Camarena, Your Honor. The district court applied an eight-level enhancement as opposed to four and said, even if I got the calculation wrong, I would do the same thing regardless. But here the judge actually did the calculation. I mean, did the calculation of both crimes don't count. I'm still going to do the same thing. It seems hard to believe even if, I mean, you may win on one count not counting, but this judge has said very clearly that the same thing would happen. Well, Your Honor, I think it's, and I think what this court's case law recognizes is that it's very easy to say, to look at what you think is the correct guideline and say, okay, I'm going to pick the low end of that, which is 57 months, and therefore, I think that's appropriate. It's very different in reality to have a guideline range of 37 to 46 and say, okay, that's the anchor, that's the sort of starting point, and I'm actually going to actually vary upward from that. I think there's a psychology there that the guidelines exert a real gravitational pull on district court judges. They, you know, this court does not presume that within guideline sentence is reasonable, but in real life, in district court, the guidelines are where the sentence starts, and district courts generally, you know, follow that unless they give a really good explanation for not doing so. And so I think it's very easy to say in the abstract, yes, I would do the same thing because I just think this sounds appropriate, versus actually having that range and saying, okay, I'm actually going to vary up by 11 months and impose that sentence. Okay, let's hear from the government, and we'll give you a minute for rebuttal. Good morning, Your Honors. Nancy Olson appearing on behalf of the government. May it please the court, since the court's questions are... Can I ask you a question just off the bat? Of course. Are you kind of a member of the appellate team in your office? Yes, I am. That's what I assumed. So I am trying to figure out why you all didn't argue harmlessness, because your colleague in the, before Judge Navarro was this? It was Judge Navarro. He was talking about you all and said, hey, Judge, can you help me out? I know my appellate folks would really appreciate it if you could do the calculations both ways. And so he tried to get something on the record that would help. Correct. You all apparently looked at this and said, no, you just didn't do enough. So we can't make this argument. And I'm trying to figure out what went wrong there. Your Honor, the only explanation I can give you, which is what happened is an oversight on my part, because when I looked at this, we started from the issue of, was it 2016? Was it 2015? Was it ex post facto? There were these shifting positions in the district court. And so I was focused primarily on, I think that the court used the wrong guideline manual. But if that's the case, do we still win because the crimes count as predicates? And so I was focused on that. And then when I got to the substantive reasonableness argument, I did go into talking about why it was not prejudiced under the third prong of plain error review. And admittedly, it would have been simple to just cross-reference that same argument I made in the first portion, and I just have to admit, this is a mistake on my part. And you acknowledge what your opponent said. I mean, I think our cases have set a very high bar for raising harmlessness sua sponte. I mean, I don't know. That's correct. Is there something extraordinary about this case? Because I think that is the standard we've said. It's got to be an extraordinary case. And this just strikes me as a run-of-the-mill case in that respect. So do you think that there's something extraordinary about this case that should cause us to raise harmlessness sua sponte? If you look at what this Court said about what that extraordinary bar is, it's whether or not the remand would be certain to replicate the same result. And so I think that's what the Court is bound by. And so the Court has to look at the record and say, is there enough there in the district court's extensive analysis of the criminal history, in the court's repeated analysis, keeping both guidelines calculations in mind throughout the proceeding? I believe Judge Navarro mentioned it two or three different times, kind of in the beginning, middle, and end. And so if the Court looks at that, keeping in mind the government's waiver, but just looks at it and says, our extraordinary case high bar is we feel that if we remand, we're certain to get the same result because of what this judge said, then that's the answer. So sort of setting aside any additional arguments I might make today, because admittedly, we waived that point, but just pointing to the fact that we did provide some context to the Court in that plain error analysis about prejudice, I believe that the same arguments would apply here, at least sort of flagging this sort of, is there anything to be done on remand question for the Court? And even though it was in that other section, I think the comments that were highlighted earlier, where the Court did go extensively into the criminal history, the Court also asked the government, if even if the sexually motivated coercion was not a crime of violence, could that be taken into consideration such that a higher sentence could be imposed even outside of the guidelines or specifically under 3553A? And then in imposing the ultimate sentence, the Court did say that she essentially paraphrased 3553A and said, it meets the purposes of sentencing and it's sufficient but not greater than necessary, and did make those specific findings, as Judge Watford noted, as prompted by the AUSA. Are you familiar with the Acosta-Chavez case? It's harmless error context. It was a case like this where the District Court calculated the range and said, I would do the same thing anyway, but we reversed anyway. I think if I'm remembering the correct case, Your Honor, I think the issue there was a lack of more robust comments. So how is this case different from that case? In a few ways. So one, because this Court's case law does say one factor that would prompt the Court to affirm and not remand is if the District Court keeps both guideline ranges in mind throughout. And so we have that. I'll just provide you a couple of record sites. She mentioned it at 24, 25, 28, and also at 56. She said either way we calculate it. So the Court in that case calculated it both ways too, but you're saying in our case they calculated it both ways more times? Is that what you mean? Well, specifically because the rule in the case law that says if you can do this or not, even if you calculate it both ways at the beginning, that's not enough, the record has to demonstrate that the Court was still keeping it in mind throughout because the idea being if you calculate it both ways at the beginning, but then you go through this long proceeding and you're hearing different arguments and you're considering all these things, there's nothing to say that you're really thinking about, well, it could have been 21 or it could have been 57 all the way at the end. And so the more comments you have from the District Court keeping it in mind throughout bolsters this argument that there would be no difference on remand. So I think the difference there was mentioning it at the beginning isn't sufficient, whereas mentioning it, keeping it in mind throughout would be an indication to this Court that the District Judge knew what it was doing in arriving at the specific sentence and choosing it based on this defendant, his history, what was going on here, not merely because something is a predicate under the guidelines or not. So I'm thinking aloud and this may be totally off-base. If we simply found that harmlessness had not been waived, then I would think we wouldn't reach necessarily any of the issues regarding whether it qualifies, whether we would just affirm on that ground. Whereas if we were to reverse, then we would normally reach first the question, we would have to reach the question of whether there was a crime of violence or not under these two crimes and that would at least provide guidance for other District Courts who might have to I think there is a practical difference in its impact on other District Courts in which route we take. I don't know if you wanted to comment on that and I hesitate to even raise convenience for the District Courts as a ground of decision, but I throw it out for what it's worth. Sure, Your Honor. I think it's kind of up to this Court how it wants to decide. For example, if the Court says there's no Ninth Circuit decision on Nevada sexually motivated coercion and we need that. However, if the Court is saying at the end of the day it doesn't matter based on the District Court's comments and harmless error, even in the light of the government not raising it, but we have this standard that we are confident that the District Court will do the same thing on remand. Because what she might do on remand then is exactly the same thing and it might be irrelevant whether those are crimes of violence or not because she might say, yes, they still both are. However, I'm going to make even more comments and make a finding that under either guideline and here's why and so on and so forth, kind of bolstering the record on that. And so you could provide sort of that advisory opinion, but even if you just went on harmlessness, I think you might end up with the same kind of reasoning from the District Court just providing alternative bases for getting to this 57 months that she selected at the first sentencing hearing. So I think it depends on what the Court wants to do. I see I have about two minutes left. Would the Court like me to address Nevada sexually motivated coercion if the Court is inclined to talk about the merits of the underlying crimes? Okay. Thank you, Your Honors. We would ask, even in light of the government's omission in the section about the guidelines analysis, in light of the comments that we made about the non-prejudicial effect of those alternative findings that the District Court has made, we would like to ask the District Court to make a comment to its case law that says, if you're certain that remand would come up with the same result, that you would affirm the District Court here. Thank you. Okay. Thank you. Let's give you a minute for rebuttal. All right. Very briefly, Your Honor, I've had a chance to look back at the pages of the EOR that you mentioned, and as I read them, the District Court in that case is simply describing the facts of the prior convictions. There's no commentary about how those are serious offenses and how the punishments were not serious enough and he should have received more time, and therefore, we need a harsher punishment in this case. It's entirely descriptive, not normative. And so I don't think that those passages support the idea that the District Court was basing its decision, its harmless error decision, on those crimes. In fact, the District Court talks about things like jaywalking, traffic tickets, obstruction or contempt of court, things that just could not have been the reason for a variance up to what the District Court did. So I don't think those passages support that. But in addition, I think that this line of questioning, respectfully, is a perfect example of why this Court is reluctant to sue a sponte recharmlessness. The government never made this argument about how this passage shows the District Court would have done the same thing regardless. It wasn't in its brief. It wasn't in its 28J letter that it filed last week. This is the first time I've had a chance to look back at these passages carefully and consider them. And part of the reason this Court doesn't sue a sponte address harmlessness is that it doesn't want litigants to be sandbagged based on arguments that were never raised by the opposing party. Right, which is why we issued the order we did and why we have you here to address them. Issue arguments related to harmlessness. I agree it would be totally inappropriate for us not to have allowed you to respond. But you you have been given that opportunity, it seems to me. Exactly. But I'm saying specifically the idea that these passages on EOR 24 through 28 are the are the evidence the Court could use to show the error was not harmless. You know, the government never raised that. So I was unaware that was, you know, potentially the basis for that argument. And having looked back to them, I don't think they support that argument. But if they've been raised in the briefing, I would have had a chance to lay it out much more carefully and advisedly. And I think, you know, it just goes to show in general why this Court doesn't do the government's work for it. Yes, I agree with that, certainly. Okay, thank you very much. The case just argued will be submitted. We will move to the next case on our calendar, which is Gardner versus Chevron Capital Court.
judges: Watford, Friedland, Rakoff